

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 13, 2023

**BY EMAIL**

The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, N.Y. 10007

      Re:    ***United States of America v. Sequan Jackson and Damon Dore*, 22 Cr. 352 (JSR)**

Dear Judge Rakoff:

      The Government writes to apprise the court of Sequan Jackson's and Damon Dore's recent bail violations and to request that the Court remand them to pretrial detention. On Sunday, March 5, 2023, personnel at the Metropolitan Detention Center ("MDC") recovered a smart phone (the "Contraband Phone") from Jatiek Smith. Based on the Government's judicially authorized review of the Contraband Phone, we have learned that Jackson and Dore (collectively, the "Defendants") have been communicating both directly and indirectly with Smith on a regular basis, in flagrant disregard of the bail conditions this Court imposed. In any prosecution, this kind of conduct would be alarming and grounds for remand. But in this prosecution, where there has been a long history of violence, witness intimidation, and tampering, immediate remand is necessary to protect the community and witnesses from these Defendants.

**I.  The Defendants' Current Bail Status**

      As this Court is aware, on June 28, 2022, the Defendants were arrested on a two-count indictment charging them with racketeering and extortion conspiracies.

      On June 28, 2022, over the Government's objection, Magistrate Judge Aaron released Dore on a $50,000 personal recognizance bond. His conditions of release include a requirement that he not contact his co-defendants, except in the presence of counsel. Dkt. No. 30, at 8.

      Also on June 28, 2022, Judge Aaron ordered Jackson detained as both a risk of flight and a danger to the community. Dkt. No. 14. On October 21, 2022, the Court held a hearing on Jackson's renewed request for bail. In making that bail application, Jackson's counsel argued that Jackson was willing to be released on the most restrictive conditions, which would help him prepare for his then-upcoming trial. During that conference, the Court noted the "long history in this court of persons in similar groups, like the Bloods, of not only violence, but witness intimidation, and that is a very great concern to the Court with a trial coming up so soon." Dkt. No. 111, Transcript of Oct. 21, 2022 Bail Hearing, at 20. But, the Court further indicated that it

was amenable to releasing Jackson, "provided that there are enough safeguards to genuinely prevent against even the possibility of witness intimidation or other violence[.]" *Id.* Following the hearing, Jackson proposed to install a video monitoring system at the apartment of his girlfriend ("Girlfriend-1"). The Government advised the Court that pretrial services did not conduct this type of supervision for any of its supervisees, did not have the resources to conduct such supervision, and would not consent to do so in this case. The Government further confirmed that Pretrial Services did not have the capability or resources to monitor a supervisee's communications over the internet or telephone.

On October 25, 2022, the Court released Jackson on home incarceration to Girlfrind-1's home. Among other conditions, the Court ordered Jackson to have "no contact with any members of the Bloods gang, any defendant in this case (except through counsel), anyone convicted of or who has pending criminal charges against them, or any EMS companies, public adjusters, or their employees."

## II. The Defendants Present an Insurmountable Danger to the Community and Witnesses and Must be Remanded

### A. Jackson

As the Government has proffered in prior bail arguments, Jackson was a leader of a violent racketeering enterprise. He administered the rotation system for the Enterprise, through which industry participants were forced, by threats of violence and actual violence, to make payments to the Enterprise or hand over business contracts. He himself used violence against other industry participants. In one incident, in January 2021, he assaulted a homeowner who refused to hire First Response. He also directed other Enterprise members to use violence. In an incident in October 2021, Jackson—over the phone—ordered Dore to have a construction worker assaulted. After the assault was carried out by a number of Enterprise members, the construction worker's identification card was photographed as an additional threat. Furthermore, at the time of his arrest, Jackson, a convicted felon with a history of violent offenses,[1] had two guns in a lockbox under his bed, right next to his passport. And, throughout the offense conduct, Jackson was Smith's loyal lieutenant. Jackson stood alongside Smith on multiple occasions when Smith made violent threats against anyone who disregarded the Enterprise's rules or cooperated with law enforcement.

Based on the Government's preliminary review of the Contraband Phone, the communications make clear that Jackson has continued to act as Smith's lieutenant in ongoing efforts to potentially threaten and tamper with witnesses. Jackson is using multiple phones and multiple intermediaries to remain in constant communication with Smith, including taking Smith's directions as to how to coordinate their defense from the outside.

---

[1] In 2015, Jackson was convicted of assault in the third degree; in 2007, of attempted robbery in the second degree; and in 2006, of criminal possession of a loaded firearm.

For example, the Contraband Phone contains a WhatsApp chat with an individual saved as "Suuuu"—an apparent reference to "Supa," Jackson's alias.[2] Throughout this chat, it is clear that Jackson and Smith are speculating about witnesses who may testify against them. While some messages appear to be deleted, and we do not have the content of any phone calls they appeared to have had, we note the following messages (text and voice note) that Smith left for Jackson regarding cooperating witnesses:

- "I've got a few developments I gotta put you onto, bro."
- "All these lawyers saying [Name-1] is cooperating. . . . We gonna eat him alive."
- [Name-2], I don't know about that n*****."
- "Supposedly [Name-2] is testifying against n***** too."

In addition, as the Government previewed at the March 7, 2023 conference, Smith also used the Contraband Phone to pressure his co-defendants from taking pleas, and referred to anyone who pleaded guilty as his "enemy." Jackson appears to have participated in that effort. In a discussion about their co-defendant Rahmiek Lacewell, Jackson told Smith: "I can't believe this n**** man." In a message that suggests yet another unauthorized contact with a co-defendant, Jackson wrote: "I knew Ready [Lacewell's alias] was acting funny when I tried to get the kids together and they dubbed."[3] In a message exchange when it appears Jackson was using Girlfriend-1's phone to communicate with Smith, Smith sent multiple images of pages from the transcript of Lacewell's attempted plea allocution. After receiving those images, Jackson, using Girlfriend-1's phone, responds to Smith requesting a call: "Hit the other one" (apparently referencing another cellphone, as described below). These efforts to dissuade co-defendants from pleading, and to speculate about potential cooperating witnesses that will be "eat[en] alive," raises a credible specter of attempts at witness intimidation and tampering.

Furthermore, it appears that Jackson has used multiple intermediaries to communicate with Smith, demonstrating that he is sensitive to law enforcement detection and adept at avoiding it. During Jackson's chat with Smith under the Suuuu contact, Jackson tells Smith: "After today don't hit this phone up" but noted that his girlfriend and bond-signer, Girlfriend-1, has WhatsApp on her phone. At the end of the Suuuu chat, Jackson informs Smith: "But yea don't hit this back bro." Sure enough, Smith and Jackson appear to communicate using Girlfriend-1's phone. Smith tells Jackson, using Girlfriend-1's phone, to call Smith because he has something to tell Jackson. Jackson agrees to do so. At one point, Jackson, using Girlfriend-1's phone, tells Smith to reach him on a different cell phone ("Hit the other one"), which number the Government has not yet identified. In yet another communication, Smith directs an intermediary to "give Supa a message" because Girlfriend-1 "is playing games and I'm pretty sure it's not supa telling her to do it." As becomes clear from the context of the text communications, Smith is requesting that this intermediary go to visit Jackson in person so that Jackson can talk to Smith on this intermediary's

---

[2] There are other indications that "Suuu" is in fact Jackson. One message refers to Jackson's motion to suppress the wire. On Jackson's birthday on February 6, Smith writes, "Happy Bday bro. I love you." Jackson replies, "Thank you bro I love you too…" In addition, in a voice note, Smith specifically refers to "Suuuu's" attorney as Jackson's attorney.

[3] "Dub" is a slang term to cancel or reject something.

phone. When the intermediary asks Smith whether she can delay the visit to Jackson by a day, Smith retorts: "[T]his is about the case. If it could wait you know I would." The intermediary then apparently travels to Jackson, gives Jackson her phone so he can converse with Smith, and later confirms with Smith that they spoke (asking "[d]id y'all talk at least" and Smith responding "yea" and "[t]he whole time").

When the Court released Jackson on bail, it did so by imposing highly restrictive conditions that the Court hoped would provide "enough safeguards to genuinely prevent against even the possibility of witness intimidation or other violence[.]" Dkt. No. 111, at 20. Jackson's conduct proves that those conditions simply do not work. He has exhibited a complete disregard for the Court's rules. Even though he knew he was not allowed to speak with Smith directly, he did so anyway, using multiple cellphones and multiple intermediaries to do so.

### B.  Dore

Dore was Smith's and Jackson's trusted soldier. Dore had a role in administering the rules of the rotation system—a system built on violence, threats of violence, and intimidation. Dore, too, was involved in violence on behalf of the Enterprise, including at the direction of Smith and Jackson. As discussed above, in October 2021, Jackson directed Dore to have a construction worker assaulted. Dore, with other Enterprise members, then carried out the assault. Dore was also a participant in a January 14, 2021 assault of an employee of a competitor EMS company, who had signed up night fires in contravention of the Enterprise's rules. During that assault, the victim was encircled by a large group of people, punched multiple times, and threatened by Smith that the victim and his family members would be killed.

Like Jackson, Dore has violated his bail conditions by communicating with Smith directly. The Contraband Phone contains numerous messages between Smith and "Dee"—short of Dore's alias, "Demo." These communications show that Dore remains deeply connected to Smith and is discussing the substance of his pending case with Smith. The following are some examples of the numerous communications between Dore and Smith:

- Smith to Dore: "Biz's lawyer asked him to testify against n*****, and then when Biz said no, his lawyer told him, well [Name-1] is a rat, [Name-1] is ratting."
- Smith to Dore: "If N***** ain't with us, they against us. Point blank."
- Smith to Dore: "The lawyers was [s]aying everyone was testifying against me."
- Dore to Smith: "They offering me a plea deal[.]}
- Dore to Smith: "I'm with you I want to go to trail [*sic*]."
- Dore to Smith: "I won't ever abandon you[.]"

Dore, too, has participated in communications about the potential pleas of his co-defendants, and at least some of those communications indicate that Dore has attempted to communicate with other co-defendants about the case. For example, Smith gave Dore a number of instructions, including to "[s]end [Hasim Smith's girlfriend] all the stuff I wrote to show this clown hood" – apparently directing Dore to send materials to their co-defendant and Smith's brother Hasim Smith, a/k/a Hoodie, through Hasim's girlfriend. Dore then indicated that he had complied with Smith's directive: "Ok I'm talking to him later today[.] I sent [Hasim's girlfriend]

the shit I might not be able to be on my phone until later tho I'm bout to do some training shit with my district manager[.]"

Dore's communications with Smith show that Dore remains loyal to Smith, has flagrantly violated his bail conditions, and is coordinating his defense with Smith outside the presence of counsel, including by taking Smith's directions to contact other co-defendants.

### C. Other Relevant Communications

Dore's and Jackson's communications with Smith are not unique. Smith has had similar communications with still other individuals. Those communications reflect that Smith has involved other individuals in his efforts to exert control over his co-defendants and to deter potential witnesses. For example, on or about February 26, 2023, Smith engaged with another individual identified as "Salee" about a co-defendant's planned plea. Smith stated that "He's a coward" and "Remember that this where it all ends[.] You go and take that deal you an enemy to me." Salee responded, a short time later, that "[h]e's not taking it[.]" As a second example, on or about March 4, 2023, Smith instructed another contact, identified in his phone as "Skrillllzzz," to make a public posting at his direction: "Damn[.] I never would have thought the n***** I call brother would be willing to lie on their brothers to save themselves[.]" Smith indicated to Skrillllzzz that "[t]his is the post[,]" that "Keem is about to post it too[,]" and "I told everyone to also[.]" Smith's post could be interpreted as either a threat towards suspected cooperators or an insult to pleading co-defendants. But, Smith's purpose is clear, that is, he is trying to deploy others, on his behalf, to maximize the intimidation and influence that he can exert. And, troublingly, Smith's success at deploying others to that end is confirmed throughout his communications, including in these two exchanges.

In addition to Smith's continued control over certain co-defendants and over other associates, the communications also show that Smith continues to exert control over the industry. The communications indicate that Smith oversees particular individuals working in the fire restoration industry, such that they convey reports about particular jobs to Smith. In one instance, Smith instructed a contact identified as "Alberto" that "[w]e need to get more jobs." His messages suggest that he still remains in a position of authority.

The evidence of Dore's and Jackson's communications with Smith is particularly troubling because the Government has recently learned from several potential witnesses, suggesting that Smith and Jackson are trying to contact potential witnesses and retain control over the fire restoration industry. One potential witness was told by an intermediary that Smith, using a cellphone from inside the MDC, had reported that the potential witness would be testifying in the upcoming trial. Still another potential witness was threatened by associates of Smith and Jackson (and fellow Bloods gang members), suggesting, in substance, there would be physical reprisals if this potential witness continued to engage in the fire mitigation industry. These reported incidents, in light of Smith's prolific communications with Jackson and Dore, and prolific communications with other individuals ready to heed Smith's instructions, suggest that Enterprise members are continuing to conspire to obstruct justice and tamper with witnesses – as charged in the Indictment. Furthermore, as the Government has stated in prior conferences, witnesses in this case are already

terrified at the prospect of testifying as a result of the violence and threats imposed by this Enterprise.

### III. Conclusion

In sum, Jackson and Dore have proven that they are not amenable to supervision. There are no conditions that can reasonably protect the community and potential witnesses from the danger that they pose, given their willingness to flagrantly violate the rules of release imposed by the Court. Accordingly, their bail should be revoked.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: *[signature]*
Rushmi Bhaskaran
Mollie Bracewell
Elizabeth A. Espinosa
Adam S. Hobson
Assistant United States Attorneys

cc: Susan Kellman, Esq. (By Email)
    Michael Bradley, Esq. (By Email)