UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :
UNITED STATES OF AMERICA
                                                    :
        - v -
                                                    :        22 Cr. 352 (JSR)
JATIEK SMITH,
                                                    :
                        Defendant.
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**THE GOVERNMENT'S SUR-REPLY TO DEFENDANT JATIEK SMITH'S PRE-TRIAL
MOTION TO SUPRESS**


                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York
                                        One St. Andrew's Plaza
                                        New York, NY 10007


Rushmi Bhaskaran
Mollie Bracewell
Elizabeth A. Espinosa
Adam S. Hobson
Assistant United States Attorneys
        *Of Counsel*

## TABLE OF CONTENTS

I.    THE BORDER SEARCH WAS SUPPORTED BY REASONABLE SUSPICION ............. 1

II.   EVEN IF THE COURT CABINED THE BORDER SEARCH EXCEPTION, SUPPRESSION WOULD NOT BE APPROPRIATE ON THE BASIS OF THE GOOD FAITH EXCEPTION ................................................................................................................. 3

III.  SUPPRESSION IS NOT WARRANTED BECAUSE THE AGENTS RELIED IN GOOD FAITH ON A WARRANT TO SEARCH THE FORENSIC COPY. ........................................... 6

IV.   SUPPRESSION IS NOT WARRANTED ON THE BASIS OF THE INDEPENDENT SOURCE AND INEVITABLE DISCOVERY DOCTRINES ....................................................... 7

V.    THE WIRETAP SHOULD NOT BE SUPPRESSED ........................................................... 8

VI.   CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

*Alasaad v. Mayorkas*,
  988 F.3d 8 (1st Cir. 2022) ............................................................................................. 4

*Florida v. Jardines*,
  569 U.S. 1 (2013) ........................................................................................................... 7

*Franks v. Delaware*,
  438 U.S. 154 (1978) ....................................................................................................... 6

*Murray v. United States*,
  487 U.S. 533 (1998) ....................................................................................................... 8

*Navarette v. California*,
  572 U.S. 393 (2014) ....................................................................................................... 1

*Riley v. United* States,
  573 U.S. 373 (2014) ....................................................................................................... 4

*Rivera v. United States*,
  928 F.2d 592 (2d Cir. 1991) .......................................................................................... 6

*Segura v. United States*,
  468 U.S. 705 (1984) ....................................................................................................... 7

*United States v. Aigbekaen*,
  943 F.3d 713 (4th Cir. 2019) ..................................................................................... 4, 5

*United States v. Awadallah*,
  349 F.3d 42 (2d Cir. 2003) ............................................................................................ 6

*United States v. Booth*,
  583 F.Supp.3d 545 (S.D.N.Y. Feb. 1, 2022) ................................................................ 5

*United States v. Brown*,
  744 F. Supp. 558 (S.D.N.Y. 1990) ............................................................................... 6

*United States v. Cano*,
  934 F.3d 1002 (9th Cir. 2016) .................................................................................... 4, 5

*United States v. Drago*,
  2021 WL 3518305 (E.D.N.Y. May 6, 2021) ........................................................... 9, 10

*United States v. Falso*,
  544 F.3d 110 (2d Cir. 2008) .......................................................................................... 6

*United States v. Hassanshahi*,
  75 F. Supp. 3d 101 (D.D.C. 2014) ................................................................................ 9

*United States v. Irving*,
  452 F.3d 110 (2d Cir. 2006) ....................................................................................... 2, 3

*United States v. Johnson*,
  994 F.2d 980 (2d Cir. 1993) .......................................................................................... 7

*United States v. Klump*,
  536 F.3d 113 (2d Cir. 2008) .......................................................................................... 6

*United States v. Levy*,
  803 F.3d 120 (2d Cir. 2015) ...................................................................................... 1, 4

*United States v. Lovasco*,
  431 U.S. 783 (1977) ....................................................................................................... 9

*United States v. Molina-Isidro*,
   884 F.3d 287 (5th Cir. 2018) ................................................................. 4

*United States v. Nelson*, 20 Cr. 353 (BMC) (VMS), 2022 WL 18636591 (E.D.N.Y. Oct. 24,
   2022) ..................................................................................................... 10

*United States v. Swanson*,
   210 F.3d 788 (7th Cir. 2000) ................................................................. 6

*United States v. Wanjiku*,
   919 F.3d 472 (7th Cir. 2019) ................................................................. 4

*Whren v. United States*,
   517 U.S. 806 (1996) ............................................................................... 1

The Government respectfully submits this sur-reply in connection with defendant Jatiek Smith's motion (the "Motion") to suppress the contents of the forensic image of his cellphone (the "Forensic Copy"), which was taken during a border stop on March 2, 2021.   For the reasons set forth in the Government's opposition (Dkt. No. 168), and for the additional reasons set forth herein, the Court should deny the defendant's Motion without a hearing.

## I.      The Border Search Was Supported by Reasonable Suspicion

Smith first attacks the search of the Forensic Copy by arguing that federal agents lacked reasonable suspicion to seize and search his cellphone at the border.   Dkt. 178, Defendant's Opposition ("Opp.") at 2, 7-8.   Smith does not contest the existence of federal investigations that had been initiated at the time he crossed the border on March 2, 2021, nor does he contest the circumstances of his day-long trip to Jamaica.   Instead, he argues that these facts do not amount to reasonable suspicion.   However, based on the totality of the circumstances, and the particularized and objective facts that existed at the time of the border search, federal agents had reasonable suspicion to search the cellphone, which was and has been, for the reasons discussed in Section II, *infra*, the legal standard in place at the time of the search.

The reasonable suspicion standard requires "'considerably less than proof of wrongdoing by a preponderance of the evidence;'" indeed, it requires only "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"   *United States v. Levy*, 803 F.3d 120, 123 (2d Cir. 2015) (quoting *Navarette v. California*, 572 U.S. 393, 396-97 (2014)). Reasonable suspicion is measured in light of the "totality of the circumstances—the whole picture," *Navarette*, 572 U.S. at 397 (quotation marks omitted), and the "actual motivations of the individual officers involved . . . play no role in [the] Fourth Amendment analysis."   *Wren v. United States*, 517 U.S. 806, 813 (1996).   For this reason, "the validity of a border search does

1

not depend on whether it is prompted by a criminal investigative motive."   *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) .

The Government's reasonable suspicion was based on the results of federal investigations, one of which opened approximately one month before Smith's trip, into allegations that members of the Bloods, including Smith, were extorting members of the fire mitigation industry and laundering the proceeds of their illegal activity.   As part of those investigations and prior to the border search, FBI agents had interviewed two victims in connection with its investigation.   One of those witnesses described speaking on the phone with Smith just prior to being assaulted. Moreover, the circumstances of Smith's trip to Jamaica created reasonable suspicion.   His trip there lasted half-a day; he was rejected at the Jamaican border; and summarily returned to the United States, where CBP agents found nearly $10,000 in cash on him.   The combination of these circumstances, too, created reasonable suspicion.

Contrary to the defendant's suggestion, it does not matter that any investigation was pending for only "a few weeks," nor is it appropriate to view individual facts in isolation, instead of as a whole.   Opp. at 2.   Instead, the Court must determine whether there was a particularized and objective basis for believing that Smith was engaged in a crime.   In this case, the federal agents had ample basis for their reasonable suspicion, based on the information they had received regarding extortion in the fire mitigation industry, and Smith's involvement directing violence in the industry.

Nor is any hearing necessary to determine whether the Government had reasonable suspicion to seize Smith's phone and make the Forensic Copy.   Opp. at 2.   The defendant does not appear to contest any of the material facts surrounding the seizure of the Forensic Copy.   The defendant does not contest the existence of federal investigations with HSI and FBI; that that HSI

2

agents with the El Dorado task force were investigating Smith's participation in money laundering and extortion; and that FBI agents were investigating Smith's involvement in several assaults. Nor does the defendant contest the circumstances of his day-long trip to Jamaica, where he was rejected at the Jamaica border and found with just under $10,000 in cash at the Newark border. Instead, the defendant contests whether these facts amount to reasonable suspicion.   That is a legal question that can be resolved—in the Government's favor—without a hearing.

## II.   Even if the Court Cabined the Border Search Exception, Suppression Would Not Be Appropriate on the Basis of the Good Faith Exception

The defendant urges the Court, in what would be a question of first impression in the Second Circuit, to limit border searches based on reasonable suspicion to those involving "crossing the border" or "cross-border crime."   Opp. at 5.   As this urging makes clear, the standard the defendant asks the Court to adopt is not the law of the Supreme Court or this Circuit today, and certainly was not the law that controlled at the time of the border search in March 2021.   Based on the applicable and consistent case law that did apply at the time, reasonable suspicion was all that was required to justify a search of the defendant's phone at the border.   Accordingly, the agents acted in good faith when they searched the Forensic Copy on the basis of reasonable suspicion.

To the extent that the Second Circuit has addressed this issue at all, it has strongly suggested that a forensic search of a cellphone is supportable by reasonable suspicion.   In *Irving*, the Second Circuit upheld the search of two electronic diskettes (which, like a cellphone, can contain a large trove of personal information in an electronically stored format) and unpublished film on the basis of reasonable suspicion.   *Irving*, 452 F.3d at 124.   In *Levy*, the Second Circuit refused to limit the scope of a CBP agent's authority to search at the border, holding that CBP

3

officers "have the authority to search and review a traveler's documents and other items at the border when they reasonably suspect that the traveler is engaged in criminal activity, even if the crime falls outside the primary scope of their official duties." *Levy*, 803 F.3d at 124.   Together, these cases support the agents' forensic seizure and search of the Forensic Copy on the basis of reasonable suspicion.[1]

The Supreme Court's decision in *Riley v. United* States, 573 U.S. 373 (2014) does not call into question the Second Circuit's holdings in *Levy* (which itself was decided after *Riley*) and *Irving*.   The Government respectfully submits that *Riley* simply did not address—or disturb—the border search doctrine.   Indeed, no court of appeals that has addressed forensic searches of cellphones has held that *Riley* or its logic imposes a warrant requirement for the search of a phone at the border.   *See Alasaad v. Mayorkas*, 988 F.3d 8, 17 (1st Cir. 2022) ("*Riley* does not command a warrant requirement for border searches of electronic devices, nor does the logic behind *Riley* compel us to impose one"); *see also United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2016) ; *United States v. Wanjiku*, 919 F.3d 472, 483-84 (7th Cir. 2019); *United States v. Molina-Isidro*, 884 F.3d 287, 291-92 (5th Cir. 2018).

The Government recognizes that other courts, including the Fourth and Ninth Circuits, have cabined the scope of the border search authority, and that this Court has suggested that a warrant is required to search a phone seized at the border.   *See United States v. Aigbekaen*, 943 F.3d 713, 720-21 (4th Cir. 2019) (forensic search of a cellphone requires reasonable suspicion for

---

[1]      In addition, contrary to Smith's argument, the border search of the Forensic Copy was in full conformity with the CBP Directive of 2018, which permits an advanced or forensic search where "there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP," which includes Title 18 of the United States Code.   Dkt. No. 159-1, Def. Ex. B, at 5; Opp. at 11.

certain crimes related to the border search exception's historic purposes); *Cano*, 934 F.3d at 1016, 1018 (9th Cir. 2019) (search based on reasonable suspicion limited to digital contraband); *United States v. Booth*, 583 F.Supp.3d 545 (S.D.N.Y. Feb. 1, 2022) (noting the Court's belief that "as in the case of phones seized pursuant to a lawful arrest, the answer to the question of what police must do before searching a cell phone seized" from U.S. citizens crossing the border "is. . .simple—get a warrant.") (quotations omitted).    However, the Fourth and Ninth Circuit's decisions are not controlling law for purposes of a good-faith analysis, and this Court's suggestion of a warrant requirement in *Booth*—which was not central to its holding, and where the Court nonetheless declined to suppress border search evidence on the basis of the inevitable discovery doctrine—was written nearly one year after the border search here.    *Booth*, 583 F.Supp. at 554.

Given the state of the case law on border searches, law enforcement officers clearly acted in good faith in proceeding with a border search on reasonable suspicion.    The Fourth Circuit so held in *Aigbekaen*, where it cabined the scope of the border search exception to a more limited scope of crimes but nevertheless refused to suppress the evidence from the border search on the basis of the good faith exception.    *Aigbekaen*, 943 F.3d at 723.    The Fourth Circuit reasoned that, when the HSI agents in *Aigbekaen* conducted warrantless searches of digital devices on the border, they did so based on "established and uniform body of precedent" allowing such searches.    *Aigbekaen*, 943 F.3d at 725.    The same is true here.    Suppression—which is designed to deter police misconduct—would serve no purpose here, when the federal agents acted in good faith, on the basis of CBP's policies and procedures, and case law that supported forensic searches of cellphones on reasonable suspicion.    Accordingly, even if the Court were to limit the scope of the border search exception, suppression of the evidence is not warranted under the good faith exception.

### III.   Suppression is Not Warranted Because the Agents Relied in Good Faith on a Warrant to Search the Forensic Copy.

The defendant challenges Judge Aaron's April 9, 2021 warrant to search the Forensic Copy on the basis that it "does not state how much of what is contained therein was known by the HSI agents by March 2, 2021."[2]   But those facts were immaterial to Special Agent's Clark affidavit, which described facts, developed independently from the search of the Forensic Copy, that supported probable cause to search the Forensic Copy.   *See* Dkt. 168, Gov't Ex. A (*filed under seal*), at USAO_000325-327 (describing accounts from three witnesses regarding violence and the rotation system, jail records where Smith self-identified as a Blood, and Smith's public Facebook posts describing gang and First Response activity).   If anything, the addition of information that El Dorado agents had learned from their investigation would have only supported the probable cause that Special Agent Clark described, and further justified the basis for the border search that was fully described in the affidavit.   Furthermore, by disclosing the circumstances of Smith's day-long trip to Jamaica (which, as described above and in the Government's opposition, itself

---

[2]      Smith also insinuates that Special Agent Clark acted in bad faith.   This baseless accusation falls far short of the *Franks* standard.   To invoke the *Franks* doctrine, the defendant must demonstrate that there were intentional misstatements or omissions in the search warrant affidavit and that those misstatements or omissions were material. *See United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003).   The defendant bears the burden of establishing both components—*i.e.*, intent and materiality—by a preponderance of the evidence. *See United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008).   "The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).   To secure a *Franks* hearing, a defendant must make a "'*substantial preliminary showing*' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause."   *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (emphasis added) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56, 170-71 (1978)).   The burden to even obtain a *Franks* hearing is a heavy one, and such hearings are, thus, rare.   *See United States v. Brown*, 744 F. Supp. 558, 567 (S.D.N.Y. 1990) ("A defendant seeking to have the Court hold a *Franks* hearing bears a substantial burden."); *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000) ("These elements are hard to prove, and thus *Franks* hearings are rarely held.").   The defendant does not even attempt to meet this standard here.

created reasonable suspicion), the warrantless border search of the phone, and the results of the agents' preliminary review, Special Agent Clark transparently described the full circumstances under which the Forensic Copy was seized and initially searched.

IV. **Suppression Is Not Warranted on the Basis of The Independent Source and Inevitable Discovery Doctrines**

With respect to the independent source doctrine, the defendant argues that there was "no independent evidence" that would justify the seizure of Smith's phone as of March 2, 2021.   Opp. 8-9.   For the reasons set forth in the Government's opposition, that is wrong.   *See* Gov't Opp. at 16-19.   By March 2, 2021, two federal investigations were underway.   Prior to the border search, two victims told law enforcement officers how they had been assaulted in connection with their work in the fire mitigation industry, and one reported how he spoke to Smith, over a cellphone, just before the assault.   Gov't Ex. A, at USAO_000326-327.   These interviews alone would have supported probable cause to obtain a warrant to search the Forensic Copy as of March 2, 2021.   *See United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993) (holding that the Government satisfied the first prong of the *Murray* test because it had demonstrated "that there was independent probable cause to listen to the tapes.").   In addition to these facts, the Clark Affidavit described a review of Smith's public Facebook posts, in which Smith had posted about the Bloods and First Response, and prison records that showed Smith had self-reported as a Blood while in prison.   *Id.* at USAO_000327-328.

Furthermore, contrary to the defendant's suggestion, the Supreme Court's decision in *Riley* does not undermine its decision in *Segura v. United States*, 468 U.S. 705 (1984).   *Segura* involved the search of a defendant's home, the search of which is at the heartland of the Fourth Amendment's warrant requirement.   *See Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("[W]hen it

comes to the Fourth Amendment, the home is first among equals.").   Furthermore, *Segura* stands for the proposition that, if the Government obtains a warrant based on facts that are divorced from any illegal search, the warrant can serve as an independent source for any subsequent search that precludes suppression.   *Segura*, 468 at 768; *see also Murray v. United States*, 487 U.S. 533, 542 (1998) ("So long as a later, lawful seizure is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply.").   *Riley* does not cast doubt on the principle that, where law enforcement officers obtain a warrant untainted by an illegal search, a search pursuant to that warrant need not be suppressed.

The defendant also argues that the Government would not have inevitably discovered the information on Forensic Copy because Smith could have deleted or destroyed his phone after it had been copied at the border.   However, Smith's phone that was seized and searched pursuant to a warrant at the time of his arrest includes substantially all the information contained on the Forensic Copy—indicating that Smith simply did not delete content on his his phone after the border stop as defense counsel hypothesized he could have.   Therefore, the Government could have inevitably discovered the contents on Smith's phone by seeking a warrant on the phone itself or a cloud-based backup copy.

## V.     The Wiretap Should Not be Suppressed

In urging the Court to suppress the wiretap, Smith does not address the first prong of the attenuation doctrine, that is, the temporal remoteness from any unconstitutional search to the discovery of the evidence that the defendant seeks to suppress.   Here, the warrant for the wiretap was obtained in October 2021, seven months after the Forensic Copy was seized at the border, and six months after agents obtained a warrant to search it.   This temporal remoteness weighs in favor

of attenuation.   *See United States v. Hassanshahi*, 75 F. Supp. 3d 101, 110 (D.D.C. 2014) (four months between the unconstitutional search and the challenged search weighed against suppression).

Smith argues that the numerous intervening circumstances between the warrantless search of the Forensic Copy and the Government obtaining a Title III wiretap on Smith's phone were all tainted by the warrantless review.   Opp. at 10.   But there were numerous events that break any chain of illegality—including the warrant that Judge Aaron signed to search the Forensic Copy. In addition, the affidavit for the wiretap documented numerous independent sources that were not derived from the pre-warrant, border search.   These included interviews of dozens of witnesses; bank records; the review of Smith's Facebook account; and the use of undercover and confidential sources.   Gov't Ex. B, at 20-24, 38-42, 47-48, and 51-52.   None of these subsequent investigative steps were tainted by the allegedly illegal border search.   *See United States v. Drago*, 2021 WL 3518305, at *22 (E.D.N.Y. May 6, 2021) (numerous investigative steps that took place over a period of time constituted intervening circumstances).[3]   These intervening circumstances further weigh in favor of attenuation.

Finally, Smith argues that Special Agent Clark's inclusion of the facts of the border search in the warrant applications somehow suggest that law enforcement agents acted in bad faith—but the opposite is true.   The affidavits in support of the warrant for the Forensic Copy and the Title

---

[3]      Smith makes a passing argument that the Government sought an eavesdropping warrant "because the agents did not have enough evidence to make an arrest without the additional evidence they hoped to secure through the wiretap."   Opp. at 10.   To the extent this argument suggests that the Government acted in bad faith, the defendant is wrong.   In *Lovasco*, the Supreme Court held that prosecutors are "under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt."   *United States v. Lovasco,* 431 U.S. 783, 791 (1977).

III wiretap accurately and completely disclosed, to two separate federal judges, the circumstances under which the Forensic Copy was obtained and subsequently searched.    In the presence of these fulsome disclosures to two federal judges, there can be no argument that the agents acted flagrantly.  *See Drago*, 2021 WL 3518305, at *23.   Under such circumstances, suppression "would not deter misconduct here because the Government did not exhibit a 'deliberate, reckless, or grossly negligent' disregard' for [Smith's] Fourth Amendment rights."   *United States v. Nelson*, 20 Cr. 353 (BMC) (VMS), 2022 WL 18636591, at *14 (E.D.N.Y. Oct. 24, 2022). Accordingly, under the attenuation doctrine, the Title III wiretap on Smith's phone should not be suppressed.

**VI.    Conclusion**

For the foregoing reasons, the Government respectfully submits that the defendant's Motion should be denied.

Dated: New York, New York
       March 16, 2023

Respectfully Submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    _/s/_____
       Rushmi Bhaskaran
       Mollie Bracewell
       Elizabeth Espinosa
       Adam Hobson
       Assistant United States Attorneys
       (212) 637-2439 / 2218 / 2216 / 2484

10